UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ISAAC TYRONE JACKSON,

                        Plaintiff,

v.                                                       Case No. 17-cv-1382-DEJ-PP

CHRISTOPHER SCHMALING, *et al.*,

                        Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING THE COMPLAINT (DKT. NO. 1)**

---

This case currently is assigned to Magistrate Judge David E. Jones. Although the plaintiff has consented to Judge Jones hearing and deciding the case, the defendants have not yet had the opportunity to decide whether to consent, because until now, the court has not screened the complaint and decided whether it should be served on the defendants. Because *both* parties have not yet consented to the magistrate judge hearing the case, the district court judge will screen the complaint.

**I. THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because the plaintiff was incarcerated when he filed the complaint. 28 U.S.C. §1915. The PLRA allows an incarcerated plaintiff to proceed with a lawsuit in federal court without prepaying the full civil case filing fee, as long as he pays an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial

1

partial filing fee, the plaintiff can pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On October 13, 2017, Judge Jones assessed an initial partial filing fee of $35.76. Dkt. No. 5. The plaintiff paid that amount on October 30, 2017. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filling fee and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

**II.     SCREENING OF THE PLAINTIFF'S COMPLAINT**

    A.     <u>Standard for Screening Complaints</u>

The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will

2

not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   Facts Alleged in the Complaint

The plaintiff has sued Sheriff Schmaling, Chief Deputy Hanrahan, Lt. Chavez, Lt. Friend, and corrections officers Johnson, Noble, Ervin, Tapa and Kosterman. Dkt. No. 1 at 1.

On July 28, 2017, around 3:25 p.m., the plaintiff had a psychological breakdown (he describes it as a "blackout") and used his toilet to flood his cell. Id. at 3. Correctional Officers Kosterman, Tapa and Ervin came to the plaintiff's

3

cell and turned off both the toilet and sink water. Id.

The following day, on July 29, 2017, the plaintiff told CO #JG 10039 in person that he was thirsty, and was becoming dehydrated; that officer did not offer him water. Id. The plaintiff says that third shift officer JE-9766 "verified" that his water was off, but did not offer him any drinking water. Id. The plaintiff wrote to Sergeant Gonzalez that day regarding the issue. Id. J.C.-7315 personally verified that the water was off, but did not offer the plaintiff any water. Id.

The next day, on July 30, 2017, the plaintiff informed several more individuals (Sergeant Bose, Officer #9879, Lieutenant Chavez, Lieutenant Friend, K.S. #7920, Ms. Peterson, Sergeant Winstel, and Officer #10158) that he didn't have running water in his cell. Id. at 3-4. Chavez and Friend are defendants in this case, but the other individuals are not. The plaintiff says that he "wrote" to Chavez and Friend, "informing them of the situation through request." Id. at 4. None of these individuals above offered the plaintiff any water. Id. at 3-4.

The day after that, on July 31, 2017, the plaintiff again wrote to Friend, telling him that he'd talked to another corrections officer, who'd verified that the water was off (and said she couldn't fix it). Id. at 4. She had told the plaintiff that she would inform the active sergeant that he or she needed to send someone fix it. Id. The plaintiff then wrote again to Chavez and Friend, telling them that he had to resort to drinking toilet water because he was starting to feel light-headed, dehydrated and sick. Id. He also told them that he

4

felt he was being punished for having psychological problems, and for flooding his cell. Id.

Later that day, the plaintiff told Correctional Officer Noonun that he didn't have running water in his cell; Noonun said he'd inform staff. Id. The plaintiff also informed Officer MY-9929 in person that the plaintiff had had to drink toilet water, and was having pain in his stomach, neck and head. Id. at 4-5. (Neither Noonun nor Officer MY-9929 is a defendant.) Later that day, the plaintiff told Correctional Officer Noble about the "whole situation," including everyone he'd come in contact with and everyone to whom he'd spoken. Id. at 5. Noble, Tapa and Correctional Officer Grieke (not a defendant in the case) came to the plaintiff's cell several hours later, and "tried" (the plaintiff puts this word in parentheses) to turn the water back on. Id. They left, telling the plaintiff that "maintenance [would] be contacted." Id. Finally, around 9:43 p.m. on July 31, 2017, maintenance was able to replace the broken water pipe and the plaintiff had access to drinking water again. Id. The plaintiff says that he was told by the medical staff "that there is a great possibility that [he is] suffering from some kind of bacteria infection from drinking the toilet water." Id. He got a prescription for Amoxicillin 1,000 mg twice a day for ten days, as well as two other medications. Id.

The plaintiff indicates that he put in anywhere from four to six grievances, asking for a final disposition. Id. at 6. He says he never has received a final disposition. Id. He indicates that he has numerous forms of evidence supporting his claims. Id.

The plaintiff seeks damages for pain and suffering and mental distress, as well as punitive damages. Id. at 7.

C.    Legal Analysis of Alleged Facts

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)).

Liability under §1983 is predicated on a defendant's personal involvement in the constitutional deprivation. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Id. (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)). He "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)).

The Eighth Amendment protects an inmate's right to humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 825-26 (1994). To state a conditions of confinement claim, the plaintiff must allege that: (1) the condition was sufficiently serious to deprive him of the minimal civilized measure of life's necessities, and (2) prison officials showed "deliberate indifference" toward that

condition. Id. Prison officials are deliberately indifferent when they know about a condition and either act or fail to act in disregard of that condition. Id.

The plaintiff alleges that Chavez, Friend, Nobel, Ervin, Tapa, and Kosterman all were aware (in varying degrees) that he didn't have drinking water in his cell for several days. The court finds, for the purposes of this screening order, that not having drinking water for almost three days constitutes a violation of an inmate's right to humane conditions of confinement.

Kosterman, Tapa and Ervin were the ones who turned off the water to the cell on July 28, 2017. The plaintiff does not allege that he asked any of these three defendants for drinking water at that time. He doesn't say what time they turned off the water. He does not say whether Kosterman or Ervin knew that the plaintiff didn't have drinking water for nearly three days after that date. Tapa was one of the officers who came in on the evening of July 31 to try to turn the water back on, so at some point, Tapa knew the plaintiff had not had water since July 28. All three were aware, however, as of July 28, 2017, that there was no running water in the plaintiff's cell. Because they turned off the water, it is reasonable to assume at this stage that Kosterman, Tapa and Ervin had a responsibility to make sure that the plaintiff had water within a reasonable time. The court concludes that, at this early stage of the case, the plaintiff has stated sufficient facts to allow him to proceed on a claim that Kosterman, Tapa and Ervin were deliberately indifferent to an unconstitutional condition of confinement.

7

On July 30, 2017, the day after the water was turned off, the plaintiff wrote to Chavez and Friend, telling them that he didn't have running water in his cell. Chavez and Friend didn't give him any drinking water at that time. The plaintiff wrote to Friend again on July 31, and to both Chavez and Friend that same day, this time informing them that he was dehydrated and had been reduced to drinking toilet water. It appears, from the limited facts in the complaint, that neither Chavez nor Friend ever responded to the plaintiff. The court concludes that these facts are sufficient to allow the plaintiff to proceed on deliberate indifference claims against Chavez and Friend.

The plaintiff says that he told Noble about the "whole situation" at around 5:00 p.m. on July 31, 2017. Noble verified that the plaintiff's water was off, and he came back to the plaintiff's cell almost three hours later with Tapa and another corrections officer to try to turn the water back on. It appears that Noble left without the water being on, and without offering or giving the plaintiff any water. It was not until five hours after Noble first encountered the plaintiff that maintenance turned the water back on. Assuming, as it appears, that Noble knew for five hours that the plaintiff had not had access to fresh drinking water and did not offer him any, the court concludes that the plaintiff has alleged sufficient facts to allow him to proceed on a deliberate indifference claim against Noble.

The remaining three defendants are Sheriff Schmaling, Chief Deputy John C. Hanrahan, and CO Johnson. The plaintiff does not make any allegations against these defendants, and it does not appear from his detailed

8

recitation of the facts that they had any personal involvement in the events of July 28-31, 2017. As the court explained above, a defendant cannot be held liable under §1983 unless he or she was personally involved in the constitutional violation—either knew about it and condoned or facilitated it, or directed it. The plaintiff makes no allegations which would support a finding of liability against these three defendants. The court will dismiss Schmaling, Hanrahan and Johnson as defendants based on lack of personal involvement.

### III. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **ORDERS** the agency having custody of the plaintiff to collect from the plaintiff's prison trust account the **$314.24** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forward payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined. If the plaintiff is transferred to another institution—county, state or federal—the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court **ORDERS** that the plaintiff may proceed on Eighth Amendment claims of deliberate indifference against defendants Kosterman, Tapa, Ervin, Chavez, Friend and Noble.

The court **ORDERS** that Christopher Schmaling, John C. Hanrahan, and CO Johnson are **DISMISSED** as defendants.

The court **ORDERS** that the United States Marshal shall serve a copy of the complaint and this order upon defendants Chavez, Friend, Nobel, Ervin, Tapa and Kosterman under Federal Rule of Civil Procedure 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** Chavez, Friend, Nobel, Ervin, Tapa and Kosterman to file a responsive pleading to the complaint.

The court **ORDERS** that the parties may not begin discovery until after Judge Jones enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the clerk's office to return this case to Judge Jones for further proceedings.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should retain a personal copy of each document filed with the court.

The court advises the plaintiff that failure to file documents or take other required actions by the deadlines the court imposes may result in the court dismissing the case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 5th day of March, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**